UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**ROBERT F. CARR** and **BETH CARR**

        Plaintiffs,

   v.                                     5:01-CV-1514 (HGM/GJD)

**MICHAEL WEINIG, AG,** and
**MICHAEL WEINIG, INC.,**

        Defendants.
_____
_____

**MICHAEL WEINIG, INC.,**

        Third-Party Plaintiff,

   v.

**L. & J.G. STICKLEY, INC.**

        Third-Party Defendant.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

MENTER, RUDIN TRIVELPIECE, P.C.        JAMES H. MCGOWAN, III, ESQ.
Attorneys for Plaintiffs
500 South Salina Street
Syracuse, New York 13202-3300

BALCH & BINGHAM, LLP                    JAMES D. MEADOWS, ESQ.
Attorneys for Defendants/Third-Party Plaintiff
14 Piedmont Center
3535 Piedmont Road, N.E.
Suite 1100
Atlanta, GA 30305

LAW OFFICES OF LAURIE OGDEN         JAMES E. CONWAY, ESQ.
Attorneys for Third-Party Defendant
441 South Salina Street
The Galleries of Syracuse, Second Floor #364
Syracuse, New York 13202-2364

**HOWARD G. MUNSON,**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

Currently before the Court is Defendant/Third-Party-Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Dkt. No. 29, Notice of Mot. Plaintiffs and Third-Party-Defendant oppose the motion, and Third-Party-Defendant additionally cross-moves: (1) for an order pursuant to Rules 14 and/or 42(b) of the Federal Rules of Civil Procedure severing the third-party action such that it is tried separately from the underlying action and (2) for an order pursuant to 22 NYCRR § 1200.24 (DR 5-105) requiring Michael Weinig, AG ("Weinig AG") and Michael Weinig, Inc. ("Weinig, Inc.") to be represented by separate counsel. Dkt. No. 34, Notice of Cross-Mot. For the reasons that follow below, the Court GRANTS Defendant/Third-Party-Plaintiff's motion for summary judgment and DENIES Third-Party-Defendant's cross-motion for orders severing the third-party action and requiring Weinig, AG and Weinig, Inc. to be represented by separate counsel.

## BACKGROUND

Plaintiffs, Robert F. and Beth Carr, who reside in the County of Madison, State of New York, filed this personal injury/negligence/products liability action against Defendant, Weinig, AG, and Defendant/Third-Party-Plaintiff, Weinig, Inc. Dkt. No.1, Compl. at ¶ 1. Plaintiffs assert eight causes of action sounding in negligence, strict liability, breach of warranty, and loss of services and seek millions of dollars in compensation and damages. Dkt. No. 1, Compl. Weinig, AG is a publicly traded foreign corporation with its principal place of business in Tauberbischofsheim, Germany. Id. at ¶ 5. Weinig, Inc. is a wholly owned subsidiary of Weinig, AG with its principal place of business in Mooresville, North Carolina, id. at ¶ 7; thus, the Court's jurisdiction is premised upon diversity of citizenship with the amount in controversy exceeding $75,000. *See* 28 U.S.C. §

2

1332.

Plaintiffs allege that Defendants/Third-Party-Plaintiff design, develop test, manufacture, market, sell and distribute industrial woodworking machinery. Plaintiffs allege that Defendants/Third-Party-Plaintiff manufactured and sold a "Unimat 23" molding machine to Third-Party-Defendant, L. & J.G. Stickley, Inc. ("Stickley"). Plaintiffs alleged that prior to the time of Mr. Carr's injuries, Defendants/Third-Party-Plaintiff delivered, installed and tested the subject Unimat 23 at Stickley's premises. Id. at ¶¶ 11-13. Plaintiffs allege that "Robert F. Carr was traversing a walkway at Stickley when a board being run through a Unimat 23 machine 'kicked back,' was thrust through the air, and violently struck Mr. Carr" by which he "sustained catastrophic and permanent personal injuries, including the loss of fingers on his right hand . . . ." Id. at ¶¶ 16-17; Dkt. No. 31, Defs.' Statement of Material Facts at ¶ 2. Plaintiffs allege that defective design and manufacture of the Unimat 23 caused Mr. Carr's injuries. Dkt. No. 31, Defs.' Statement of Material Facts at ¶ 3.

Stickley purchased the Unimat 23 from Weinig, Inc. on or about April 8, 1997, and the two parties executed a purchase order in connection therewith. Id. at ¶ 4. The purchase order states that the purchaser understands that Weinig, Inc. did not "manufacture any Products and more particularly does not manufacture, manage, design, package, crate, transport, or otherwise have any responsibility for the product other than as an Independent sales and servicing business." Dkt. No. 31, Defs.' Statement of Material Facts at ¶ 5. The purchase order further states:

> The Company [Weinig, Inc.] does not warrant against and shall not be responsible for any economic loss, property damage, product liability or personal injury claimed by the Purchaser, its agents, employees, successors, or assigns, arising out of the use of the Products except as expressly provided for herein. Purchaser Agrees To Assume All Risks And Liabilities And To Indemnify And Hold Company Harmless From And Against Any And All Claims, causes of actions, suits, proceedings, costs, loss, damages, liabilities and/or expenses which arise out of or are attributable to the Products, any alleged breach of warranty or misrepresentation, express or implied, or any intentional or negligent acts or omission, injury, death, property damage or

3

>other claim, including without limitation, claims relating to: the manufacture, sale, delivery, resale, installation, repair, operation or use of any products covered by or furnished under this Contract; failure to warn; unsafe or defective product, design or manufacture; or product liability claim, In any form whatsoever by purchaser or its agents, employees, insurance carriers, successor, or assigns, whether such claim or cause of action is based in contract, tort, strict liability, product liability, warrant, comparative negligence, common law or statutory basis or any other theory of recovery, unless and until it shall be finally determined that the Company was negligent in the sale, delivery, installation, or servicing of the Products, and that said negligence was the sole and direct cause of the damages claimed, and that no portion of said damages were caused by the contributory negligence of any other party.

Dkt. No. 33, Fritsch Aff. at Ex. A, ¶ 9. Weinig, Inc., filed a third party complaint against Stickley seeking contractual indemnification. Dkt. No. 18, Third-Party Compl.; Dkt. No. 31, Defs.' Statement of Material Facts at ¶ 7; Dkt. No. 36, Third-Party-Def.'s Statement of Material facts at ¶ 7.

Stickley generally contests that all of the terms attached to the purchase order became part of the parties' agreement and that the purchase order represents the extent of the parties' negotiations. Stickley submits that the parties settled upon the material terms of the agreement prior to the preparation of the purchase order. Dkt. No. 36, Third-Party-Def.'s Statement of Material facts at ¶ 4. As to the purchase order's liability and indemnification clause cited at length above, Stickley denies that it became a part of the purchase agreement between the parties because its language is a material alteration of the parties' verbal agreement that did not become a part of the contract. Dkt. No. 36, Third-Party-Def.'s Statement of Material facts at ¶¶ 6, 8-9. Stickley disputes that it assented to the indemnification clause and that such language was proposed during the parties' negotiations. Id. at ¶¶ 10-11. Prior to filing a third-party complaint against Stickley seeking contractual indemnification, Weinig, Inc. requested that Stickley voluntarily honor its agreement, but Stickley refused. Dkt. No. 30, Def./Third Party Pl.'s Mem. of Law at 3.

## DISCUSSION

**I.     Summary Judgment Standard**

4

The standard for summary judgment is familiar and well-settled. Rule 56 allows for summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1991) (quoting FED.R.CIV.P. 1). A court may grant a motion for summary judgment when the moving party carries its burden of showing that no triable issues of fact exist. *See* Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir.1990). In light of this burden, any inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party. *See* id.; United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed. 2d 176 (1962) (per curiam). If the moving party meets its burden, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The role of the court on a motion for summary judgment is not to try issues of fact but only to determine whether there are issues of fact to be tried. *See*, *e.g.*, Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987). The drawing of inferences and the assessment of the credibility of the witnesses remain within the province of the finders of fact. To defeat a motion for summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. When reasonable minds could not differ as to the

5

import of the evidence, then summary judgment is proper.  *See* Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511.

**II.     Contractual Indemnification**

Weinig, Inc. asserts that it is entitled to an order of conditional indemnification from Stickley as a matter of law and directs the Court's attention to the operative purchase order's indemnification clause.  Stickley submits that there are material questions of fact as to the enforceability of the indemnification clause relied upon by Weinig, Inc. and whether the indemnification clause became part of the purchase agreement between Stickley and Weinig, Inc.

Because the parties brought their claims in the State of New York, and the contractual documents between Weinig, Inc. and Stickley specify that North Carolina law is to control, *see* Dkt. No. 33, Fritsch Aff., Ex. A at ¶ 12, the Court must apply the choice of law principles to resolve the potential conflict.  The Court must apply the choice of law principles of the forum state, New York, to determine which state's laws govern the plaintiffs' claims.  *See* Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Barkanic v. General Admin. of CAAC, 923 F.2d 957, 960-961 (2d Cir. 1991). When determining which state's law applies in a tort case, the courts of New York first determine whether laws conflict and if so whether the conflicting laws are "loss-allocating," such as laws relating to contribution and indemnification, or "conduct-regulating," such as strict liability laws.  *See* Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 521-522, 620 N.Y.S.2d 310, 644 N.E.2d 1001 (1994).  The Court finds that the laws of North Carolina and New York are in accord on the issue of contractual indemnification.  *See* Unimax Corp. v. Lumbermens Mut. Cas. Co., 908 F.Supp. 148, 153 (S.D.N.Y. 1995) ("New York and North Carolina apply the same rules for contract interpretation."); *compare* Commissioners of State Ins. Fund v. Insurance Co. of North America, 80 N.Y.2d 992, 592 N.Y.S.2d 648, 650, 607 N.E.2d 795, 797 (1992) *and* Weissman v. Sinorm Deli, Inc., 88 N.Y.2d 437, 669 N.E.2d 242, 646 N.Y.S.2d 308 (1996) *with* C.D.

6

Spangler Co. v. Industrial Crankshaft & Eng'g Co., 326 N.C. 133, 388 S.E.2d 557 (1990) *and* Cooper v. H.B. Owsley & Son, Inc., 43 N.C. App. 261, 258 S.E.2d 842 (1979).

"In an indemnification, the entire loss is shifted from the person who has been compelled to pay (the indemnitee) to another upon the imposition of a contingent liability (citation omitted). An indemnification is thus a primary obligation: if a loss or event occurs within its scope, the indemnitors are primarily liable." Weissman, 88 N.Y.2d at 446. "In New York, indemnification claims must be grounded in contract either express or implied." Cohen v. Elephant Wireless, Inc., 2004 WL 1872421 at *11 (S.D.N.Y. Aug. 19, 2004) (citing McDermott v. City of New York, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980) ("The right to indemnity . . . springs from a contract, express or implied, and full, not partial, reimbursement is sought") (internal quotations omitted)). "[T]he intention to indemnify" must be "'unmistakably clear' from the language of the agreement, [or] the Court will not read into an agreement a legal duty the parties did not clearly intend." Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp., 182 F.3d 163, 165 (2d Cir. 1999) (quoting Levine v. Shell Oil Co., 28 N.Y.2d 205, 211, 321 N.Y.S.2d 81, 269 N.E.2d 799, 801-02 (1971)). To demonstrate this contractual clarity, the New York Court of Appeals has held that a party show either that the language of the agreement evinces the "unmistakable intent to indemnify" or that this intent can "be implied from the purpose and language of the whole agreement." Haynes v. Kleinewefers and Lembo Corp., 921 F.2d 453, 456-57 (2d Cir. 1990) (citing Heimbach v. Metropolitan Transp. Auth., 75 N.Y.2d 387 (1990), and Hogeland v. Sibley, Lindsay & Curr Co., 42 N.Y.2d 153 (1977)). A plaintiff must prove four elements to prevail on a breach of contract claim: (1) the making of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. Coastal Aviation v. Commander Aircraft Co., 937 F.Supp. 1051, 1060 (S.D.N.Y. 1996).

There is no question that the terms attached to the purchase order contain an indemnification

7

clause, the language of which is clear and unmistakable. Similarly, there is no question that the parties formed a contract and that Weinig, Inc. performed its obligations under the contract. Stickley does not contest the meaning of the indemnification clause, but rather denies any breach and disputes: (1) that it was integrated into the agreement and (2) its enforceability. Stickley explains that extensive negotiations preceded its purchase of the Unimat 23 from Michael Weinig, Inc. Stickley maintains that during the negotiations, *i.e.*, before either party prepared or signed the purchase order, the parties agreed to and finalized the terms of the purchase. Stickley asserts that the parties never once mentioned, let alone discussed or agreed to, Stickley's indemnification of Weinig, Inc. *See* Dkt. No. 35, Third-Party-Def.'s Mem. of Law at 5. According to Stickley, the indemnification clause first appeared with the purchase order form Weinig, Inc. sent to Stickley. Stickley characterizes the indemnification clause a material alteration of the parties' agreement under N.Y. U.C.C. LAW § 2-207(2)(b) and argues that it was not incorporated into the agreement. Id. Moreover, Stickley argues that because the indemnification clause materially altered the agreement, Judy Carmon, its "Sourcing Agent" did not have the authority to agree to such an indemnification clause. *See* id. at 7. Stickley must at least concede, however, that Carmon had the authority to agree to some of the purchase order's terms, such as payment and delivery–those terms favorable to Stickley. Weinig, Inc. disputes Stickley's characterization and arguments.

Weinig asserts that regardless of whether Carmon had actual authority to agree to the indemnification clause, Stickley and Carmon led Weinig to believe that she was a duly authorized representative. Weinig, Inc. directs the Court's attention to the purchase order, which specifies that a "duly authorized representative of purchaser" "places the following order subject to the Terms and Conditions of Sale, Delivery, Payment and Use as set forth below and on the reverse side hereof, including limitations of warranty and liability which have been duly noted and accepted without reservations and which exclude any agreements not confirmed in writing." Dkt. No. 33, Ex. A.

8

Weinig, Inc. aruges that the "terms which were memorialized in a written purchase order should not be subject to change some six years later based upon previously undisclosed claim that the Stickley representative was authorized to accept the terms favorable to Stickley, but not authorized to accept those terms that Stickley subsequently decided it did not like." Dkt. No. 37, Third-Party-Pl.'s Reply Mem. of Law at 3.

Additional terms in an acceptance or confirmation between merchants become part of the contract unless they materially alter it. *See* N.Y. U.C.C. LAW § 2-207(2)(b). The Second Circuit has held that "the party opposing the inclusion of an additional term under § 2-207(2)(b) bears the burden of proving that the term amounts to a material alteration." Bayway Refining Co. v. Oxygenated Marketing and Trading A.G., 215 F.3d 219, 221 (2d Cir. 2000). "A material alteration is one that would result in surprise or hardship if incorporated without express awareness by the other party." Id. at 224. "To carry the burden of showing surprise, a party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." Id. (citing Union Carbide Corp. v. Oscar Mayer Foods Corp., 947 F.2d 1333, 1336 (7th Cir.1991)). "Hardship . . . is assessed as of the time the parties contracted–not retrospectively." Dayoub Marketing, Inc. v. S.K. Produce Corp., 2005 WL 3006032, at *5 (S.D.N.Y. Nov. 9, 2005). The Second Circuit has expressed doubt as to whether hardship alone may constitute an independent basis for finding that an additional term materially alters a contract, and has specifically declined to resolve the issue. Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 101 (2d Cir. 2002); Bayway Ref., 215 F.3d at 226. "Typically, courts that have relied on hardship to find that an additional term materially alters a contract have done so when the term is one that creates or allocates an open-ended or prolonged liability." Bayway Ref., 215 F.2d at 226 (citations omitted). In Bayway Refining, the Second Circuit "noted that while Official Comment 4 to section 2- 207 seems to suggest that hardship is an independent ground for finding that an alteration is material,

9

there are cases indicating that hardship is not an element separate from surprise but rather a 'consequence' of material alteration." Id. at 226. Paragraph 6 to the Official Comment for N.Y. U.C.C. LAW § 2-207 explains that "[if] no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to . . . ."

Stickley has not met its burden of proving that the indemnification clause amounts to a material alteration. Stickley has neither demonstrated that the indemnification clause was anything but readily apparent on the purchase order/agreement nor that it lacked express awareness as to the indemnification clause. Moreover, Carmon, Stickley's sourcing agent and a duly authorized Stickley representative, signed the purchase order without reservation: Stickley made no objection to indemnification clause's inclusion, *i.e.*, neither expressed surprise nor balked at the agreement because of any kind of hardship the indemnification clause posed at the time of the agreement. The cases Stickley has cited are easily distinguished. In St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc., the court noted that the plaintiff had *not* signed the acknowledgment form. 687 F.Supp. 820, 824 (S.D.N.Y. 1988). Similarly, in Charles J. King, Inc. v. Barge LM-10, the plaintiff did not sign the written confirmation. 518 F.Supp. 1117, 1119-20 (S.D.N.Y. 1981). In Jeppestol v. Alfa Laval, Inc., the indemnity provision included as an additional term in the third-party-defendant's acceptance was "not part of the contract of sale because [the defendant/third-party-plaintiff] objected to such terms within a reasonable time." 293 A.D.2d 575, 576, 740 N.Y.S.2d 136, 137 (2nd Dep't 2002) (citing U.C.C. § 2-207(2)(c)).

In addition, Stickley has not hurdled the parol evidence rule, which "generally prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have reduced to an unambiguous integrated writing." Gualandi v. Adams, 385 F.3d 236, 242 (2d Cir. 2004) (citation omitted). "It is generally understood that the

10

purpose of an integration clause 'is to require full application of the parol evidence rule in order to bar the introduction of extrinsic evidence to vary or contradict the terms of the writing.'" Dujardin v. Liberty Media Corp., 359 F.Supp.2d 337, 356 (S.D.N.Y. 2005) (quoting Primex Int'l Corp. v. Wal-Mart Stores, Inc., 89 N.Y.2d 594, 600, 657 N.Y.S.2d 385, 679 N.E.2d 624 (1997)); Bank Julius Baer & Co., Ltd. v. Waxfield Ltd., 424 F.3d 278, 283 (2d Cir. 2005) ("[A] merger clause acts to require full application of the parol evidence rule to the writing in question."). Here, the purchase order includes an integration clause which provides in pertinent part that Stickley placed the order "subject to the Terms and Conditions of Sale, Delivery, Payment and Use as set forth below and on the reverse side hereof, including limitations of warranty and liability which have been duly noted and accepted without reservations and which *exclude* any agreements not confirmed in writing." Dkt. No. 33, Ex. A (emphasis added). As in Dujardin, the integration clause prohibits the Court from considering any oral contract that was allegedly made prior to the written agreement, because parol evidence to vary, contradict, or supplement the terms of a fully integrated agreement is not admissible. *See* Primex, 89 N.Y.2d at 600, 657 N.Y.S.2d 385, 679 N.E.2d 624. "[A]bsent an allegation of fraud . . . , the presence of an integration or merger clause triggers the parol evidence rule." Holloway v. King, 361 F.Supp.2d 351, 358 (S.D.N.Y. 2005) (citing Primex, 89 N.Y.2d at 599, 657 N.Y.S.2d 385, 679 N.E.2d 624). The Court GRANTS Weinig, Inc.'s motion for summary judgment for a conditional order of indemnification pending the final determination of Weinig, Inc.'s negligence.

### III. Third-Party-Defendant's Requests to Sever Third-Party Action and for Separate Counsel

Third-Party-Defendant cross-moves: (1) for an order pursuant to Rules 14 and/or 42(b) of the Federal Rules of Civil Procedure severing the third party action such that it is tried separately from the underlying action and (2) for an order pursuant to 22 NYCRR § 1200.24 (DR 5-105)

requiring Weinig, AG and Weinig, Inc. to be represented by separate counsel.

### A.     *Separate Trials*

Rule 14 provides in pertinent part that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff . . . Any party may move to strike the third-party claim, or for its severance or separate trial." FED.R.CIV.P. 14(a). Rule 42 provides in pertinent part that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." FED.R.CIV.P. 42(a). "Federal courts view severance as a 'procedural device to be employed only in exceptional circumstances.'" Wausau Bus. Ins. Co. v. Turner Const. Co., 2001 WL 963943, at *1 (S.D.N.Y. Aug. 23, 2001) (quoting Marisol A. by Forbes v. Giuliani, 929 F.Supp. 662, 693 (S.D.N.Y. 1996)). In deciding whether to sever the claims, the Court may consider: (1) whether the issues sought to be tried separately are significantly different; (2) whether the issues are triable by the jury or the court; (3) whether the posture of discovery as to the respective issues favors separate trials; (4) whether the issues require different proof; and (5) whether the non-movant will be prejudiced by a severance. Hartford Fire Ins. Co. v. County Asphalt, Inc., 2002 WL 31654853, at *4 (S.D.N.Y. Nov. 22, 2002). The movant has the burden of showing that it will be prejudiced if a separate trial is not granted. Stratagem Dev. Corp. v. Heron Int'l N.V., 153 F.R.D. 535, 551 (S.D.N.Y. 1994). The Court, which has broad discretion to order separate trials, Simpson v. Pittsburgh Corning Corp., 901 F.2d 277, 283 (2d Cir.), *cert. dismissed*, 497 U.S. 1057 (1990), must balance the specific risks of prejudice with the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits.

Stratagem Dev. Corp., 153 F.R.D. at 551.

Because the Court has already granted Weinig, Inc.'s summary judgment motion for a conditional order of indemnification, Stickley's purported need for separate trials is moot. Even assuming *arguendo* that the Court were to have denied Weinig, Inc.'s motion for summary judgment, the Court would not be inclined to order separate trials. The Court finds that the interests of judicial economy and efficiency outweigh the potential for prejudice inherent in trying all claims in one proceeding. The proposed separate trials would require duplication of evidence, greatly inconveniencing the parties, witnesses, and the Court. The Court DENIES Stickley's cross-motion seeking and order for separate trials.

  *B.*  *Separate Counsel*

Stickley objects to Weinig AG and Weinig, Inc. being represented by the same law firm. Stickley theorizes that certain cross claims have not been asserted because of the entities' common representation. *See* Dkt. No. 35, Third-Party-Def.'s Mem. of Law at 14. In the Second Circuit, attorneys' conduct is governed by the "Code of Professional Responsibility of the American Bar Association." Funds of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 n.2 (2d Cir. 1977). Disciplinary Rule 5-105 provides in pertinent part:

> A. A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).
>
> B. A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).
>
> C. In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure

> of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

Nevertheless, under the Model Rules of Professional Conduct, a lawyer may represent multiple clients if he "reasonably believes the representation will not adversely affect the relationship with the other client" and "each client consents after consultation." Model Rules of Professional Conduct Rule 1.7(a). Here, Weinig, Inc. asserts that "obviously, both Weinig, Inc. and Weinig AG are aware of the [common] representation" and generally denies any conflict of interest. Dkt. No. 37, Third-Party Pl.'s Mem. of Law at 9. The Court finds no ethical violations and concludes that Stickley's speculation is not enough to overcome the "high standard of proof" parties seeking disqualification must satisfy. Felix v. Balkin, 49 F.Supp.2d 260 (S.D.N.Y. 1999) (citing Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d. Cir.1983)). The Court DENIES Stickley's cross-motion for an order requiring Weinig AG and Weinig, Inc. to be represented by separate counsel.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions, oral argument and the applicable law, the Court hereby

**GRANTS** Weinig, Inc.'s summary judgment motion for an conditional order of indemnification and further

**DENIES** Stickley's cross-motion for an order severing the third-party action and requiring Weinig AG and Weinig, Inc. to be represented by separate counsel.

**IT IS SO ORDERED.**

Dated: August 14, 2006
Syracuse, New York

                                                  */s/ Howard G. Munson*
                                                  Howard G. Munson
                                                  Senior U.S. District Judge